**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

CREDIT BUREAU CONNECTION, INC.                    CASE NO. CV F 10-1202 LJO GSA

　　　　　　　　　Plaintiffs,                    **ORDER ON PLAINTIFF'S TEMPORARY RESTRAINING ORDER MOTION** (Doc. 6)

　　　　v.

WILLIAM PARDINI, and B.T.B. INC., d.b.a.
DATA CONSULTANTS,

　　　　　　　　　Defendants.
_____/

### INTRODUCTION

　　　　Plaintiff Credit Bureau Connection, Inc. ("CBC") moves for a temporary restraining order against defendants William Pardini ("Mr. Pardini"), a CBC shareholder, director, and officer, and B.T.B., Inc., d.b.a. Data Consultants ("Data Consultants"), a company wholly-owned and operated by Mr. Pardini (collectively "defendants"). CBC contends that defendants have blocked CBC from accessing its copyrighted software program and database. CBC seeks an order, *inter alia*, to prohibit defendants from restricting CBC's access to the software program, known as eF&I Complete, changing passwords to the internet-based software program, changing the source code, and otherwise interfering with CBC's customer contracts. In addition, CBC seeks an order to mandate defendants to restore access rights and functionalities of the software to CBC. Although defendants successfully dispute ownership of the copyright, CBC establishes a likelihood of success on its claim that defendants are violating its unlimited implied license to the software and are interfering with CBC's existing and prospective economic relations. Having balanced the equitable factors, this Court GRANTS CBC's temporary restraining order motion, and ORDERS defendants to show cause why a preliminary injunction should not issue.

1

<u>**BACKGROUND**</u>

**CBC's Motion and Allegations**

CBC seeks mandatory and prohibitory injunctive relief against defendants based on allegations that defendants are misappropriating and infringing on its proprietary software, eF&I Complete. CBC's action and motion are based on the following allegations:

Plaintiff CBC is a California corporation originally formed by Michael Green ("Mr. Green") in 2004. CBC provides car dealerships with access to credit reports for individual car purchasers. CBC is able to order credit reports from each of the three credit bureaus through a license held by Mr. Green ("bureau license"). Since 1988, Mr. Green has also been in the business of providing car dealerships with finance and insurance software through his sole proprietorship known as Automotive Marketing Profit Systems ("AMPS"). Defendant Data Consultants is wholly owned and operated by defendant Mr. Pardini. Data Consultants is also in the business of providing finance and insurance software to automobile dealerships.

Shortly after the formation of CBC, Mr. Green and Mr. Pardini agreed to pool their assets, and CBC became a joint venture between the two. According to their agreement, CBC would have access to Data Consultants' business infrastructure, including its employees and office space, while Data Consultants would have access to CBC's bureau license and contacts in the automobile industry. Mr. Pardini became a 50% shareholder, officer, and director of CBC.

CBC began to work with Darin Larsen ("Mr. Larsen"), a computer consultant working for Data Consultants. CBC paid Mr. Larsen directly for the time he spent working on CBC business, and Data Consultants paid Mr. Larsen separately for his Data Consultants work. In March 2006, Mr. Larsen, on behalf of CBC, began to develop a web-based software system that would integrate both the credit reporting as well as financial and insurance systems services. The project was authorized by Mr. Green and Mr. Pardini as officers and directors of CBC. In consideration of his efforts, Mr. Larsen became a twenty percent (20%) shareholder of CBC, with Mr. Pardini and Mr. Green each contributing ten percent (10%) of their respective interests in the company. Mr. Larsen was paid hourly for his work by CBC.

By July 2007, the integrated software known as eF&I Complete was ready to be sold. The development of the software was paid for entirely by CBC. Mr. Larsen provided the initial concept and

overall design.  The source code and other technical aspects of the system were created by Data Consultants employees working under the direction and supervision of Mr. Larsen.  CBC paid for the Data Consultants employees for the expense of the development of the project.  Both CBC and Data Consultants marketed eF&I Complete under its individual name and for its own account.

In January 2008, CBC and Data Consultants came to the following agreement:  the companies would split Mr. Larsen's salary equally; Data Consultants would pay CBC a 50% commission from all revenues generated from its use of the bureau license; CBC would pay Data Consultants 20% of all the revenues received from CBC customers as compensation for the use Data Consultants' administrative and technical support of eF&I Complete; and Data Consultants would pay CBC a total of $86,000 as reimbursement for a portion of CBC's costs with the development of eF&I Complete.  The parties operated under this agreement for two years.  As of the date this action was initiated, Data Consultants has paid $30,000 of the total $86,000 it promised to pay to CBC under the agreement.

From mid-2007 through early 2010, CBC contracted with individual automotive dealerships, automotive dealership groups, and national resellers who marketed the software.  In addition, CBC and Data Consultants entered into multiple integrated agreements through which CBC and Data Consultants became jointly obligated to provide and support the software.

Beginning in early 2010, Mr. Pardini began to express his dissatisfaction with the compensation that he and Data Consultants received in connection with the support of eF&I Complete.  The parties were unable to resolve the issue, and Mr. Pardini, Mr. Green, and Mr. Larsen agreed that the operations of CBC and Data Consultants should be separated completely.  In April 2010, CBC acquired its own office space and personnel.  At the same time, the CBC principals continued to discuss the details of the separation, including which company would have title to eF&I Complete and what compensation would be paid to the other for a perpetual license.

Although separation discussions were ongoing, all parties agreed that both companies would continue to have access to eF&I Complete.  Unbeknownst to CBC, however, Mr. Pardini and Data Consultants converted the eF&I Complete software by blocking CBC's access to the features of the software that are necessary to demonstrate the software and to install information regarding new customers. In addition, Data Consultants employees have modified the software's administrative rights,

making it impossible for CBC's representatives to support existing customers in connection with their operation of the system.  Moreover, Mr. Pardini has made statements to CBC's existing and prospective customers that only he and Data Consultants could provide and support the eF&I Complete software. CBC requested defendants to restore its access to all feature of eF&I Complete.  Defendants have refused these multiple requests.

Based on these allegations, CBC contends that its ability to service its customers, integration partners and resellers have been jeopardized and that its entire business.  CBC asserts that defendants' actions are interfering with CBC's ability to honor existing contracts and are causing the loss of current and prospective customers, goodwill, and prospective market share.  CBC contends that its shareholder, director and officer, Mr. Pardini, breached his fiduciary duty of loyalty to CBC, and has intentionally interfered with valuable CBC contracts in a calculated effort to deprive the remaining CBC shareholders of their livelihood.  CBC asserts the following eleven causes of action against defendants:

1.    Breach of Fiduciary Duty;

2.    Unfair Business Practices;

3.    Intentional Interference with Existing and Prospective Economic Advantage;

4.    Negligent Interference with Existing and Prospective Economic Advantage;

5.    Conversion;

6.    Unjust Enrichment;

7.    Accounting;

8.    Injunctive Relief;

9.    Copyright Infringement;

10.   Breach of Contract; and

11.   Declaratory Relief.

In this motion, CBC seeks an order to enjoin defendants from engaging in, committing or performing the following acts:

1.    Restricting CBC's access to, or interfering in CBC's ability to use any portion of the eF&I Complete software;

2.    Changing the User ID or Password for the Master User Account Access on the hosting

4

1    account used to access the administrative account;

2    3.    Changing the User IDs or Passwords used to access either the eF&I Complete live
3          application server or the live database server;

4    4.    Changing the User IDs or Passwords used to access the administrative account functions
5          at Rackspace;

6    5.    Changing the User IDs or Passwords used to access the eF&I Complete backup servers;

7    6.    Changing the Internet Protocol ("IP") Address where the domain name serve is currently
8          pointing;

9    7.    Changing any of the eF&I Complete source code, except that they may make minor
10         changes to the source code as necessary to fix an error that causes material harm to
11         customers;

12   8.    Deleting anything from the live database or application server;

13   9.    Further unlawful interference with any existing contracts between CBC and its
14         customers; and

15   10.   Making representations to CBC's existing or potential customers that CBC does not have
16         ownership or use rights to eF&I Complete.

17   In addition to this prohibitions, CBC seeks a mandatory injunction to require defendants to:

18   1.    Provide CBC access to all eF&I Complete functionalities of the CBC demo user account;
19         and

20   2.    Revise the source code on the CBC Support Tool software program to restore the access
21         rights for all CBC personnel User Ids.

22                                   **Defendants' Opposition**

23        The Court ordered defendants to respond to plaintiffs' motion no later than three court days after

24   receiving the motion and complaint.  Defendants filed an opposition to the instant motion on July 8,

25   2010.  Defendants submit evidence, including the declaration of Mr. Pardini ("Pardini Decl.") and

26   exhibits attached thereto, to support the following:

27        In 1980, Mr. Pardini formed a software company that specialized in providing financial and

28   insurance software catered to the automobile industry.  The company eventually became Data

Consultants. Data Consultants has a successful software product called Grapevine, which was developed over more than two decades, and is used by car dealerships to handle the finance and insurance issues related to the selling and leasing of cars.

Mr. Pardini and Mr. Green joined forces in 2005. Each owned 50% of CBC, while maintaining their separate companies. Mr. Pardini owned Data Consultants and Mr. Green owned AMPS. Prior to entering into the CBC joint venture, Data Consultants owned the Grapevine software and had many customers. Although AMPS had fewer customers, Mr. Green was authorized to resell to automotive dealers throughout the United States. Mr. Pardini understood that by creating CBC, the new company could take advantage of the volume discounts from the credit bureaus by combining credit bureau customers of the two companies.

Mr. Larsen worked for Data Consultants from 1982 through 1997. Originally hired as a programmer, Mr. Larsen eventually became General Manager of Data Consultants. Mr. Larsen was re-hired in 2000. Data Consultants has paid Mr. Larsen monthly from 2000-2009.

In 2006, Mr. Larsen and Data Consultants programmers who worked on the project demonstrated a prototype version of a web-based version of the Grapevine software. That prototype eventually was developed into eF&I Complete. CBC did not pay for the development work that was done on the prototype in 2006.

At a subsequent meeting, Mr. Pardini, Mr. Larsen, and Mr. Green agreed that Mr. Larsen would become a CBC shareholder. The original agreement was that CBC would pay for the development of the software by Data Consultant's employees and CBC would own the web-based software. CBC soon discovered, however, that it did not have the revenue streams to support an expensive development project over the long term. Before the end of 2007, CBC had stopped paying for the development of eF&I Complete.

Mr. Pardini attaches CBC's financial statements to support his position that CBC did not pay for the cost of development of eF&I Complete. CBC's 2006 balance sheet shows investment in the software totally around $5000 of "outside labor," a category later used to pay Data Consultants employees. Pardini Decl., Ex. A. 2007 CBC financial statements show a credit of $86,000 for outside labor costs. Mr. Pardini contends that the credit represents that Data Consultants agreed to pay back the $86,000 as

1   "reimbursement for some of the expenses that has been incurred by CBC in developing eF&I Complete."

2   No other expenses on the CBC balance sheets relate to software development.

3        Mr. Pardini submits a "CBC Strategy Meeting Overview (1/16/2008)" that outlines "the key

4   elements of understanding in bringing together the collective forces" of Data Consultants, CBC, and

5   AMPS.  Pardini Decl., Ex. B.  According to the document, the parties agreed that, effective January 1,

6   2008,  Data Consultants would pay back CBC for its costs related to eF&I Complete paid in 2007, and

7   Data Consultants would own the software.  Data Consultants is the organization "primarily responsible

8   for," among other things, "R&D and product development," "Owns eF&I related products developed

9   and supporting systems and software," and "Will provide a software license to CBC and Amps with

10   provisions outlines below." *Id.*  A separate point provides that Data Consultants would pay CBC a 50%

11   commission from revenues generated by a separate software called eCredit, and "CBC will pay [Data

12   Consultants] 20% commission of monthly billings to generally compensate for the cost of product

13   development, support, forms, and related overhead." *Id.*

14        Data Consultants primarily funded the research and development of eF&I Complete.  The

15   $86,000 Data Consultants agreed to pay back represents costs paid by CBC from January through

16   September 2007.  Not only has Data Consultants paid back part of that money, but it also paid all other

17   costs, including costs related to quality assurance, licenses for the software development tools, and

18   computers used by the developers.  Moreover, beginning in January 2008, Data Consultants has retained

19   and paid programmers as full-time employees who have worked on the software, adding new

20   functionality and features.

21        Mr. Pardini alleges that the parties have long agreed that Data Consultants owns eF&I Complete.

22   To support his position, Mr. Pardini points to the January 16, 2008 CBC meeting notes.  Mr. Pardini also

23   submits a February 23, 2010 separation proposal, which he claims was submitted to him by CBC, that

24   includes the following provision: "CBC will not have any rights to the non-credit related functionality

25   of the existing eF&I Complete software." Pardini Decl., Ex. C.  Email exchanges transmitted by CBC

26   in its declaration support the assertion that the parties contemplated that Data Consultants would own

27   eF&I Complete.  *See*, Declaration of Kristi W. Dean ("Dean Decl."), Ex. 8-10.

28        CBC filed a reply on July 11, 2010, which this Court considered.

## STANDARD OF REVIEW

The same standards generally apply to temporary restraining orders and preliminary injunctions. *Northeast Ohio Coalition for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2009).  A "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 552 U.S. 674, 128 S. Ct. 2207, 2219 (2008).  As such, the Court may only grant such relief "upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat'l Res. Def. Council, Inc.*, 129 S.Ct. 365, 375 (2008).[1]  To prevail, the moving party must show : (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm absent a preliminary injunction; (3) that the balance of equities tips in the moving party's favor; and (4) than an injunction is in the public interest. *Id*. at 374. In considering the four factors, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 129 S.Ct. at 376 (quoting *Amoco Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531 542 (1987)); *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 651 (9th Cir. 2009).

As set forth in *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009), a "preliminary injunction can take two forms:"

> A prohibitory injunction prohibits a party from taking action and "pre-serve[s] the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988); *see also Heckler v. Lopez*, 463 U.S. 1328, 1333, 104 S. Ct. 10, 77 L. Ed. 2d 1431 (1983) (a prohibitory injunction "freezes the positions of the parties until the court can hear the case on the merits"). A mandatory injunction "orders a responsible party to 'take action.'" *Meghrig v. KFC Western.*, 516 U.S. 479, 484, 116 S. Ct. 1251, 134 L. Ed. 2d 121 (1996). A mandatory injunction "'goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored.'" *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980) (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)).

CBC seeks both a prohibitory and mandatory injunction.  These requests will be considered accordingly.

---

[1] CBC erroneously argues that this Court may apply a lesser standard than that set forth in *Winter v. Nat'l Res. Def. Council, Inc.*, 129 S.Ct. 365, 375 (2008).  In considering preliminary injunctions after *Winter*, Ninth Circuit cases have unanimously rejected this notion.  *See e.g., Am. Trucking Ass'ns. Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) ("To the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable."); *Stormans Inc. v. Selecky*, 571 F.3d 960, 977 (9th Cir. 2009) (recognizing that the *Winter* court rejected the Ninth Circuit sliding scale test because it was "too lenient"); *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847-849-50 (9th Cir. 2009) (applying *Winter* factors rather than former sliding scale test).

1

**DISCUSSION**

2

**I.      Likelihood of Success on Merits**

3      Pursuant to *Winter*, Plaintiffs must make a "clear showing" that they are "likely to succeed on

4    the merits." 129 S.Ct. at 375-76; *Stormans Inc. v. Selecky*, 571 F.3d 960, 978 (9th Cir. 2009).  In this

5    motion, CBC argues that it is likely to succeed against defendants on its claims for copyright

6    infringement, breach of fiduciary duty, interference with economic advantage, and unfair competition.

7    Because all of CBC's claims rest on the premise that it owns and has a right to the unlimited use of eF&I

8    Complete, the Court begins its analysis with CBC's claims of ownership of the software.

9          **A.      Copyright Infringement**

10      CBC asserts a copyright infringement claim against defendants for interfering with CBC's use

11    of eF&I Complete.   Computer software, including the source and object codes, can be subject to

12    copyright protection. *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir.

13    1989).  To succeed on the merits of a copyright infringement claim, CBC must plead and prove: (1)

14    ownership of copyright in eF&I Complete, and (2) "copying" by Data Consultants of CBC's protectable

15    expression. *S.O.S. Inc. v. Payday Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1981) (citing *Baxter v. MCA, Inc.*,

16    812 F.2d 421, 423 (9th Cir.), *cert. denied*, 484 U.S. 954 (1987)).

17          **1.      Jurisdiction**

18      Before the Court considers the substantive arguments the Court addresses jurisdiction.  Pursuant

19    to 17 U.S.C. §411(a), "[n]o civil action for infringement of the copyright in any United States work shall

20    be instituted until preregistration or registration of the copyright claim has been made in accordance with

21    this title."  Courts interpret the meaning of the 17 U.S.C. §411(a) registration requirement differently.

22    Some interpret the provision to allow suit when an application is submitted to the Copyright Office,

23    whereas other courts require the issuance of a certificate of registration to satisfy this jurisdictional

24    prerequisite.  The United States Court of Appeals for the Ninth Circuit recently settled the split in our

25    circuit by adopting the "application approach."  In *Cosmetic Ideas, Inc. v. IAC/InteractiveCorp*., 606

26    F.3d 612, 621 (2010), the court held that "receipt by the Copyright Office of a complete application

27    satisfies the registration requirement of §411(a)."

28      CBC avers, in an unsupported statement, that it has submitted a copyright registration

application, deposit, and fee with the U.S. Copyright Office to satisfy the jurisdictional element that is a condition precedent for filing an infringement suit pursuant to 17 U.S.C. §411(a).  Defendants do not dispute that CBC filed a copyright application with the Copyright Office.  In addition, defendants agree that jurisdiction is proper because they intend to request declaratory judgment that it owns the copyright to the eF&I Complete software pursuant to 17 U.S.C. §201.  Because CBC alleges it has submitted a complete copyright application, this Court has jurisdiction over CBC's claims.

### 2.   Ownership

The parties dispute ownership of the eF&I Complete copyright.  CBC asserts three theories for ownership of the copyright.  First, CBC argues that it owns a valid copyright in eF&I Complete pursuant to the work for hire doctrine.  Second, CBC contends that eF&I Complete is a joint work of CBC and Data Consultants to allow CBC an independent right to use and license eF&I Complete without restraint.  Third, CBC argues that CBC has an implied license to use eF&I Complete, and Data Consultants has interfered impermissibly with its right to access and use the software.  Defendants contend that Data Consultants has exclusive ownership of eF&I Complete based on the facts and long-standing agreement between the parties.  The Court considers the parties' arguments below.

### A.   Work for Hire

Although copyright ownership generally "vests initially in the author or authors of the work," 17 U.S.C. §201(a), ownership of a copyright vests in the employer of an author if it was a "work made for hire." 17 U.S.C. §201(b).  The Copyright Act defines "work made for hire" as "a work prepared by an employee within the scope of his or her employment." 17 U.S.C. §101.  "In the case of a work for hire, the employer or other person for whom the work was prepared is considered the author...and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." 17 U.S.C. §201(b).  CBC argues that the copyright for eF&I Complete vested in CBC because it was a "work made for hire."

To determine whether eF&I Complete was created as a work for hire by an employee–as opposed to an independent contractor–the Court applies "the general common law of agency [to] consider the hiring party's right to control the manner and means by which the product is accomplished." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 751 (1989).  The *Reid* court set forth several factors

1    relevant to this inquiry, including:

2        the skill required; the source of the instrumentalities and tools; the location of the work;
         the duration of the relationship between the parties; whether the hiring party had the right
3        to assign additional projects to the hired party; the extent of the hired party's discretion
         over when and how long to work; the method of payment; the hired party's role in hiring
4        and paying assistants; whether the work is part of the regular business of the hiring party;
         whether the hiring party is in business; the provision of employee benefits; and the tax
5        treatment of the hired party.

6    *Id*. at 751-52 (footnotes omitted).  "No one of these factors is determinative." *Id*. at 752.  Instead,

7    because "the common-law test contains no shorthand formula or magic phrase that can be applied to fine

8    the answer, all of the incidents of the relationship must be assessed and weighed with no one factor being

9    decisive." *NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 258 (1968)); *see also, JustMed, Inc. v. Byce,*

10   600 F.3d 1118, 1126 (9th Cir. 2010) (citing *Aymes v. Bonelli*, 980 F.2d 857, 861 (2d Cir. 1992) ("It does

11   not necessarily follow that because no one factor is dispositive all factors are equally important, or

12   indeed that all factors will be relevance in every case.  The factors should not merely be tallied but

13   should be weighed according to their significance in the case.")).

14       CBC argues that the *Reid* factors support a conclusion that CBC owns eF&I Complete.  CBC

15   alleges that: (1) CBC engaged Data Consultants employees for the development of eF&I Complete; (2)

16   Mr. Larsen, on behalf of CBC, closely managed the programmers and their performance on a daily basis;

17   (3) the programmers worked out of a joint CBC/Data Consultants office, were given "jointly owned

18   tools," and were employed to not only write the source code but to modify, update, and maintain the

19   software continually; (4) CBC reimbursed Data Consultants for all assistants the programmers required;

20   (5) Mr. Larsen, on behalf of CBC, was responsible for staffing the programming work; (6) the

21   programmers had CBC email addresses, behaved as if they worked for CBC and Data Consultants, and

22   identified themselves as employees of CBC; (7) CBC had total control and discretion over the creation

23   of eF&I Complete; (8) CBC designed each element and instructed the programers how to build the code

24   that would support the design; (9) Mr. Larsen, on behalf of CBC, oversaw the programmers'

25   performance and the design functionality of the software; (10) Mr. Larsen worked closely with the

26   programmers to troubleshoot any problems with the operation of the software and came up with

27   solutions and walked through the logic and code with them; and (11) the programmers merely executed

28   Mr. Larsen's explicit and detailed directions.  CBC concedes that it did not provide the programmers

1    with employment benefits, pay social security taxes, contribute to unemployment insurance or worker's

2    compensation funds on their behalf, but argues that these factors are not dispositive.  In addition, and

3    without explanation, CBC asserts that Data Consultants was an "employee" of CBC for purposes of the

4    work for hire doctrine.

5         Data Consultants argues that the *Reid* factors favor determination that Data Consultants owns

6    the copyright to eF&I Complete.  Data Consultants contends that Mr. Larsen's involvement with the

7    research and development of eF&I Complete was on behalf of Data Consultants, based on the following:

8    (1) Mr. Larsen worked for Data Consultants from 1992-1997 as a full-time employee; (2) Mr. Larsen

9    was rehired in 2000, and worked for Data Consultants from 2000 until April 2010; (3) Mr. Larsen was

10   paid on a monthly basis for the entire time he worked at Data Consultants; and (4) Mr. Larsen worked

11   on the premises at Data Consultants, using office furniture, phones, and computers provided by Data

12   Consultants.  In addition, Data Consultants asserts that the valuable property–the source code–was

13   written by Frank Larsen, Jason Hickingbottom, and Chris Frontes ("programmers"), all of whom were

14   full-time employees of Data Consultants.  Data Consultants argues that the programmers were Data

15   Consultants employees because they: (1) were hired by Data Consultants; (2) were paid a salary by Data

16   Consultants; (3) used Data Consultants computers to do their development work; (4) worked in offices

17   that were leased by Data Consultants; and (5) received employment benefits from Data Consultants.

18        Having considered the evidence presented, the Court finds that CBC fails to carry its burden to

19   establish a likelihood of success on the merits of its copyright claim of ownership under the work for

20   hire doctrine.  Defendants successfully dispute that Mr. Larsen oversaw the development of the software

21   on behalf of CBC with evidence that Mr. Larsen was employed by Data Consultants.  This fact is equally

22   disputed by competing declarations.  Thus, the evidence does not weigh in favor of success for either

23   CBC or defendants.  Significantly, the programmers of the software and source code were paid by Data

24   Consultants and received employment benefits from Data Consultants.  These factors weigh in favor of

25   a finding that the programmers were Data Consultants employees.  As to the other factors–including

26   whether CBC and Data Consultants jointly owned the office space and equipment used, or what role

27   CBC or Data Consultants played in hiring the programmers–questions of fact remain to be resolved.  At

28   this early stage of litigation, and upon the evidence presented to this Court, CBC does not establish a

likelihood of success on its claim that the programmers were employees of CBC and that the resulting intellectual property became the property of CBC under the work for hire doctrine.

## B.    Joint Work

According to the Copyright Act, a "joint work" is "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. §101.  A joint author is entitled to modify, reproduce, or distribute copies of a work. *Id*. (citing 17 U.S.C.§§ 201(a), 106(1)-(3)).  CBC claims that it is a joint author of eF&I Complete because CBC was responsible for developing the concept, layout, look, feel and design of eF&I Complete, designed the interface layout for the software, identifying fields, buttons, and functions to be included in the software, and determining the front end of eF&I Complete.  CBC asserts that it controlled Data Consultant's work on the underlying source code to support the front end.  CBC contends that Mr. Larsen contributed work solely on behalf of CBC, and not copied from any other source, and that Mr. Larsen's contributions qualify him as a joint author of eF&I Complete.

Defendants contend that Mr. Larsen is not a joint author.  Defendants concede that Mr. Larsen contributed to the software by determining the functionality and layout of the program and developing the layout of the screens, but point out that Mr. Larsen wrote none of the source code–a fact that appears to be unopposed.  Defendants suggest that to determine whether Mr. Larsen's contributions qualify as independently copyrightable, the Court must perform an identification/abstraction analysis, such as was performed in *Merchant Transaction Sys., Inc. v. Nelcela, Inc*., 2009 WL 723001 (D. Az. 2009).

The Court need not reach the identification/abstraction analysis at this stage.  The Court must determine whether CBC has established a likelihood of success on its claim that CBC, through Mr. Larsen, was a joint author of eF&I Complete.  "Authorship is a question of fact." *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1086 (9th Cir. 1989).  Based on the evidence presented, and the parties arguments, this Court finds that CBC failed to sustain its burden.

Case law supports a finding that based on the evidence presented, Mr. Larsen was not a joint author.  CBC claims that the programmers "merely executed" Mr. Larsen's ideas.  Under the Copyright Act, however, ideas are not protected.  Rather, the execution of the ideas are protected, and the author of the execution of the ideas becomes vested in the intellectual property.  In *Whelan Assocs. v. Jaslow*

1  *Dental Lab.*, 609 F. Supp. 1307, 1318-19 (E.D. Pa. 1985), *aff'd*, 797 F.2d 1222 (3d Cir. 1986), *cert.*

2  *denied*, 479 U.S. 1031 (1987), the court rejected joint authorship under similar facts:

> In that case, a dental laboratory owner commissioned software for use in his business, disclosed to the programmers the detailed operation of his business, dictated the functions to be performed by the computer, and even helped design the language and format of some of the screens that would appear on the computer's visual displays. The court nonetheless found that the programmer was the sole author of the software. The court's principal focus was on the creation of the source and object code. The owner's "general assistance and contributions to the fund of knowledge of the author did not make [him] a creator of any original work, nor even the co-author. It is similar to an owner explaining to an architect the type and functions of a building the architect is to design for the owner. The architectural drawings are not co-authored by the owner, no matter how detailed the ideas and limitations expressed by the owner." *Id.*

9  *S.O.S.*, 886 F.2d at 1086-87 (discussing and adopting *Whelan* reasoning).  CBC relies on *S.O.S.*,

10  however, the *S.O.S.* court also rejected a joint authorship claim under similar circumstances:

> Goodman, in our view, is not a joint author of the payroll programs. She did nothing more than describe the sort of programs Payday wanted S.O.S. to write. A person who merely describes to an author what the commissioned work should do or look like is not a joint author for purposes of the Copyright Act. 17 U.S.C. § 101 defines a "joint work" as a "work prepared by two or more authors." To be an author, one must supply more than mere direction or ideas: one must "translate[] an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S. Ct. 2166, 2171, 104 L. Ed. 2d 811 (1989). The supplier of an idea is no more an "author" of a program than is the supplier of the disk on which the program is stored. *Cf.* 17 U.S.C. § 102(b) (no copyright protection for ideas); 17 U.S.C. § 202 (copyright distinct from material object in which work is embodied). We therefore decline to affirm the district court's grant of summary judgment on the alternate basis of joint authorship.

18  *S.O.S.*, 886 F.2d at 1087.  Based on the evidence presented and the relevant law, this Court finds that

19  CBC fails to demonstrate a likelihood of success on its joint authorship theory.

## C.    Implied License

21  CBC argues that "at an absolute minimum, CBC has a perpetual, non-revocable, non-exclusive

22  license to retain a copy of eF&I Complete, use eF&I Complete in at least the same scope as it has been

23  using it since 2007, and modify eF&I Complete as it deems necessary in order to enjoy the benefits of

24  its license."  A nonexclusive license need not be in writing, and may be granted orally or by implication.

25  *Food Consulting Group, Inc. v. Azzalino*, 270 F.3d 821, 825-26 (9th Cir. 2001); *see also, Asset*

26  *Marketing Systems, Inc. v. Gagnon*, 542 F.3d 748, 754 (9th Cir. 2008).  Defendants concede that CBC

27  has a license to use eF&I Complete, but argue that the license is limited.  In addition, Mr. Pardini avers

28  that he is honoring the limited license.

14

An implied license is granted when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Asset Mktg. Sys.*, 542 F.3d at 754-55 (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996)).  In considering "implied licenses for computer programs," the last prong of this test "is not limited to copying and distribution; instead [the court] look[s] at the protected right as issue–here, whether [licensor] intended that [licensee] use, retain, and modify the programs." *Asset Mktg. Sys.*, 542 F.3d at 755.  ¶

A finder of fact is likely to find an implied license.  CBC engaged, and worked closely with, Data Consultants programmers to create eF&I Complete.  Mr. Pardini avers that Data Consultants created the software, and admits that the software was delivered to CBC for its use.  Moreover, it is undisputed that from 2007 through 2010, CBC has marketed the software under its name and has enjoyed unlimited use of, and access to, the software.  Mr. Larsen, a CBC shareholder, had access to the source code and worked with the programmers to modify it throughout the time period.  Though these issues remain disputed, CBC has carried its burden to establish a likelihood of success on its claim that it has an unlimited implied license to use eF&I Complete.

Mr. Pardini claims that he is honoring the license, but admits that he has restricted CBC's access to the software and ability to service existing and new clients.  Mr. Pardini contends that "the only accounts that Data Consultants has suspended are accounts that Data Consultants was not being paid for and that were not a CBC client as of the date that CBC left the building." Pardini Decl. at ¶ 27.  Mr. Pardini admits that CBC has restricted CBC's ability to service its clients, as he avers that Data Consultants maintains and supports CBC's existing customers for eF&I software. *Id*. Mr. Pardini further admits that defendants have blocked CBC's ability to set up new clients, as "CBC can set up, install, change, customers, e-credit customers for any known third party." *Id*. at ¶ 28.  Defendants maintain that Data Consultants will provide programming and installation services for new CBC customers provided that an appropriate licensing agreement is signed. Id. at ¶ 29.  According to Mr. Pardini, Data Consultants is fully willing to service CBC's customers pursuant to the terms of the existing agreement, and to service new customers if a licensing agreement is entered into. *Id*. at ¶ 30.

1    The facts do not support defendants' position that CBC's license is limited to existing customers,

2    or that it restricts CBC's ability to service existing customers.  Defendants present no evidence that the

3    parties agreed that CBC would have a limited license, or that the license would be limited to customers

4    that existed at the time of the separation in February 2010.  The facts presented by both parties establish

5    a likelihood that CBC will prevail on its claims that CBC engaged Data Consultants to create eF&I

6    Complete, that Data Consultants delivered eF&I Complete to CBC, that CBC enjoyed unlimited use of,

7    and access to, the software until the dispute arose, and that after the dispute, Mr. Pardini restricted

8    CBC's access to the software.  Because the parties admit that CBC paid money towards the creation of

9    the software, moreover, the license may be irrevocable. *See Asset Mktg. Sys*., 542 F.3d at 757 (a

10   "nonexclusive license supported by consideration is a contract" and is irrevocable).  Accordingly, CBC

11   successfully establishes a likelihood of success on its copyright infringement claim. *See, Id*.

12          **B.       Breach of Fiduciary Duty**

13          To prevail on its breach of fiduciary duty claim, CBC must establish: "(1) the existence of a

14   relationship giving rise to a duty of loyalty; (2) one or more breaches of that duty; and (3) damage

15   proximately caused by that breach." *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410 (2007).

16   Directors of a corporation owe a fiduciary duty thereto. *Dean v. Shingle*, 198 Cal. 652 (1926).  A director

17   occupies a position of trust; he is not permitted to assume a position adverse to the corporation. *Id*.

18   According to the complaint, Mr. Pardini is a CBC shareholder, officer, and director.  In his position as

19   a CBC officer and director, Mr. Pardini owes a fiduciary duty to CBC.  Accordingly, CBC is likely to

20   establish the first element.

21          CBC alleges that Mr. Pardini has breached his duty of loyalty to CBC by converting eF&I

22   Complete for the benefit of Data Consultants and his own personal enrichment.  Mr. Pardini contends

23   that the facts establish that eF&I Complete is the property of Data Consultants, not CBC.  In addition,

24   Mr. Pardini points out that a February 23, 2010 separation agreement proposal provides that CBC has

25   no rights to the "non-credit related functionalities of the existing eF&I software" and that Data

26   Consultants–not CBC– is the company that will support the eF&I Complete software.  In addition, the

27   January 2008 CBC documents indicate that CBC agreed that it would accept reimbursement for costs

28   for the development of the software and Data Consultants would own the software.  Mr. Pardini

1  therefore submits that his position on behalf of Data Consultants is not a breach of loyalty to CBC.

2      Whether Mr. Pardini breached his duty of loyalty to CBC is a question of fact.  As set forth

3  above, however, the issue of which firm owns the rights to the software is disputed.  Neither party

4  demonstrates a clear claim of ownership of the software.  According, the Court cannot find that CBC

5  is likely to succeed on its breach of loyalty claim against Mr. Pardini.

6          **C.    Interference with Economic Advantage**

7      "The elements which a plaintiff must plead to state the cause of action for intentional interference

8  with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's

9  knowledge of this contract; (3) defendant's intentional acts designed to induct a breach or disruption of

10  the contractual relationship; (3) actual breach or disruption of the contractual relationship; and (5)

11  resulting damage." *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

12  Similarly, the "tort of intentional or negligent inference with prospective economic advantage imposes

13  liability for improper methods of disrupting or diverting the business relationship of another which fall

14  outside the boundaries of fair competition." *Settimo Assocs. v. Environ Systems, Inc.*, 14 Cal. App. 4th

15  842, 845 (1993).  To recover on the intentional interference claim, CBC must plead and prove that

16  defendants "knowingly interfered with the plaintiff's expectancy." *Della Penna v. Toyota Motor Sales,*

17  *U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995).  For both interference with economic advantage claims, CBC

18  "has the burden of pleading and proving that the defendant's interference was wrongful by some measure

19  beyond the fact of the interference itself." *Id*. at 392-93.

20      The evidence presented establishes a likelihood that defendants are interfering with economic

21  relations, or inducing CBC to breach contracts with clients.  Based on the evidence presented by Mr.

22  Pardini, CBC is likely to establish a valid contract between CBC and third parties and defendants'

23  knowledge of the contracts.  Mr. Pardini admits in his declaration to having knowledge of CBC's

24  economic relationship with Saturn of Antelope, Izmo, and a dealership in Clovis.  In addition, Mr.

25  Pardini admits that he has suspended accounts that CBC has opened after CBC left the CBC/Data

26  Consultants' shared office space.

27      CBC's economic interference claims must establish that the interference was wrongful.  CBC

28  claims that defendants' interfered wrongfully with its economic relations and contracts because they

"seized control of CBC's own copyrighted material."  Thus, CBC's economic interference claims rest on the assertion that CBC owns the rights to eF&I Complete.  As set forth above, however, CBC has not established a likelihood of success on its position that it owns, or has the unfettered right to access, eF&I Complete.  Defendants' interference with existing and prospective economic relations, however, may be the result of defendants' impermissible revocation of the implied license.  Because this Court has found a likelihood of success on the violation of the implied license, CBC may also establish that Mr. Pardini's interference is based on a wrongful act, beyond mere competitive tactics.  Accordingly, CBC has established a likelihood of success on this claim.

### D.    California's Unfair Competition Law

California Business and Professions Code section 17200 prohibits unlawful, unfair, or fraudulent business acts or practices.  The scope of California's unfair competition law is "sweeping, embracing anything that can properly be called a business practice and at the same time is forbidden by law." *Rubin v. Green*, 4 Cal.4th 1187, 1200 (1993) (quoted in *Cal-Tech Comm. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  CBC argues that it is entitled to injunctive relief pursuant to California Business and Professions Code section 172003 because Mr. "Pardini is in clear violation of his fiduciary obligations to CBC."  As set forth above, however, CBC has failed to establish that it is likely to succeed on its breach of loyalty claim.  Accordingly, and for the same reasons, CBC has failed to support its request for injunctive relief pursuant to California Business and Professions Code section 17203.

### E.    Conclusion

CBC has failed to establish a likelihood of success on its claims of ownership of eF&I Complete, but does establish that it is likely to succeed on its claim that defendants are violating its unlimited, non-exclusive, and irrevocable license to use the software.  Moreover, CBC establishes its likely to establish its claims that defendants are interfering with existing and prospective economic relations.  Accordingly, this factor tips in favor of granting equitable relief.

## II.    Irreparable Injury Absent an Injunction

Next, the Court considers whether Plaintiffs will suffer irreparable injury absent an injunction.  "Preliminary injunctive relief is available only if plaintiffs 'demonstrate that irreparable injury is *likely* in the absence of an injunction.'" *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009) (quoting

*Winter*, 129 S.Ct. at 375) (noting that the Supreme Court in *Winter* rejected the Ninth Circuit's "possibility of irreparable harm" test). "Typically, monetary harm does not constitute irreparable harm." *Cal Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 851 (9th Cir. 2009). "Economic damages are not traditionally considered irreparable because the injury *can later be remedied by a damage award*." *Id*. at 852 (emphasis in original). However, "intangible injuries, such as damage to...goodwill qualify as irreparable harm." *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc*., 944 F.2d 597, 603 (9th Cir. 2001).

CBC erroneously argues that this Court can infer irreparable harm if they establish a likelihood of success on their claims. CBC relies on pre-*Winter* case law throughout its legal memoranda, and appears to misunderstand the applicable standards for preliminary injunctive relief. This Court does not presume irreparable harm, even in intellectual property cases. *See eBay, Inc. v. MercExchange, LLC*, 126 S.Ct. 1837 (2006) (rejecting Federal Circuit's position that permanent injunctions in patent cases should be granted absent exceptional circumstances, and requiring courts to apply traditional principles of equity); *North American Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1121 (11th Cir. 2008) ("Even though we hold that [plaintiffs] have established a substantial likelihood of success on the merits of their trademark infringement and false advertising claims, we must still evaluate whether [plaintiffs] have demonstrated, with respect to each claim, that they will suffer irreparable harm in the absence of an injunction.").

In this copyright litigation, CBC may establish irreparable harm by pleading and proving harm to business reputation and market share. *Apple Inc. v. Psystar Corp*., 673 F.Supp. 2d 943, 948 (N.D. Cal. 2009); *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1215 (C.D. Cal. 2007). CBC contends that defendants' interference with existing customer contracts, and denial of its ability to set up new clients, is causing irreparable harm. Mr. Pardini admits to blocking CBC's ability to form contracts with new customers, and admits that he has diverted CBC's existing customers to Data Consultants for servicing. Based on these facts, CBC has established that it may suffer irreparable harm absent an injunction for loss of good will and market share for the eF&I Complete software. Accordingly, this factor tips in favor of injunctive relief.

///

### III.    Harm to Defendants/ Balance of Equities and Public Interest

Although neither party addressed these factors in their legal memoranda, the Court must consider the balance of equities and public interest to determine whether to grant injunctive relief to CBC. The purpose of a a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830 (1981). "Status quo" means the last uncontested status that preceded the pending controversy. *See, GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). In this case, the status quo allowed both parties equal access to the software prior to the disagreement and breakdown between the parties. In addition, Mr. Pardini presents no evidence that he or Data Consultants would be harmed if this status quo were preserved until this litigation is resolved. Accordingly, the balance of equities tips in favor of injunctive relief.

The Court finds the public interest factor to be neutral. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 129 S. Ct. at 376-77 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). "The public interest analysis for the issuance of a preliminary injunction requires [the Court] to consider whether there exists come critical public interest that would be injured by the grant of preliminary relief." *Indep. Living*, 572 F.3d at 659. Neither party suggests, and the Court does not find, that the public's interest to be affected by whether the Court grants or denies CBC injunctive relief.

### IV.    Conclusion

As set forth above, this Court finds that CBC establishes a likelihood of success on some of its claims. In addition, while this Court will not presume irreparable harm, the facts support CBC's assertion that it is likely to suffer irreparable harm. Finally, the balance of equities supports equitable relief. Having considered the appropriate factors, this Court finds that CBC is entitled to a temporary restraining order.

### V.    Bond

Pursuant to Fed. R. Civ. P. 65(c), a plaintiff must post a bond with the Court as a security prerequisite to the granting of injunctive relief. A bond must be posted "in such sum as the court deems

proper." *Id*. CBC argues that the balance of equities favors a a bond not to exceed $10,000.  Defendants do not dispute this amount in their opposition.  Accordingly, CBC must file a $10,000 bond with this Court for the following order to become effective.

**ORDER**

For the foregoing reasons, this Court:

1. GRANTS CBC's motion for a temporary restraining order;

2. ORDERS CBC to file a bond with the clerk of this Court in the amount of $10,000.  The temporary restraining order outlined below shall not be effective until CBC has filed a bond in the above-specified amount with this Court;

3. ENJOINS defendants, including Mr. Pardini, Data Consultants, their agents, servants, employees, representatives, and all persons acting in concert or participating with them, from engaging in, committing or performing the following acts:

    a. Restricting CBC's access to, or interfering in CBC's ability to use any portion of the eF&I Complete software;

    b Changing the User ID or Password for the Master User Account Access on the hosting account used to access the administrative account;

    c. Changing the User IDs or Passwords used to access either the eF&I Complete live application server or the live database server;

    d. Changing the User IDs or Passwords used to access the administrative account functions at Rackspace;

    e. Changing the User IDs or Passwords used to access the eF&I Complete backup servers;

    f. Changing the Internet Protocol ("IP") Address where the domain name serve is currently pointing;

    g. Changing any of the eF&I Complete source code, except that they may make minor changes to the source code as necessary to fix an error that causes material harm to customers;

    h. Deleting anything from the live database or application server;

21

i.      Further unlawful interference with any existing contracts between CBC and its customers; and

j.      Making representations to CBC's existing or potential customers that CBC does not have use rights to eF&I Complete;

4.      ENJOINS defendants, including Mr. Pardini, Data Consultants, their agents, servants, employees, representatives, and all persons acting in concert or participating with them, **within five days of the date the bond is filed with this Court**, to:

a.      Provide CBC access to all eF&I Complete functionalities of the CBC demo user account; and

b.      Revise the source code on the CBC Support Tool software program to restore the access rights for all CBC personnel User Ids to enable CBC the ability to set up new eF&I Complete customers;

5.      ORDERS this restraining order to remain effective for fourteen (14) days after the date the order is issued; and

6.      ORDERS defendants to show cause in writing, **no later than July 23, 2010**, why this Court should not issue a preliminary injunctive in this action to remain in effect until the issues in this action are resolved.  If defendants choose to show cause why this Court should extinguish this Court, defendants must submit evidence and argument beyond that which is presented in opposition to the instant motion.  **This Court shall discharge the show cause order if, no later than July 23, 2010, defendants file and serve a statement of consent to an extension of this restraining order.**


IT IS SO ORDERED.

**Dated:    July 12, 2010            /s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE