# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CREDIT BUREAU CONNECTION, INC. | CASE NO. CV F 10-1202 LJO GSA |
| Plaintiff, | **ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION OF TEMPORARY RESTRAINING ORDER** |
| v. | **ORDER ON PRELIMINARY INJUNCTION** |
| WILLIAM PARDINI, and B.T.B. INC., d.b.a. DATA CONSULTANTS, | **ORDER TO SHOW CAUSE** |
| Defendants. | |

## INTRODUCTION

Several matters are pending before this Court: (1) defendants' William Pardini ("Mr. Pardini") and B.T.B., Inc., d/b/a/ Data Consultants ("Data Consultants") (collectively "defendants") motion for reconsideration of this Court's July 12, 2010 temporary restraining order ("TRO"); (2) this Court's order to show cause why a preliminary injunction should not issue; (3) defendants' request for injunctive relief; and (4) defendants' failure to comply with the TRO. This Court has considered the parties' points and authorities and exhibits, and finds these matters suitable for a decision without a hearing pursuant to Local Rule 230(g). For the following reasons, this Court DENIES defendants' reconsideration motion, GRANTS in part and DENIES in part plaintiff Credit Bureau Connection, Inc.'s ("CBC's) preliminary injunction motion, ISSUES a modified preliminary injunction, and ORDERS defendants to show cause why this Court should not issue sanctions for failure to comply with the TRO.

1

# BACKGROUND

## CBC's Motion and Allegations

CBC seeks mandatory and prohibitory injunctive relief against defendants based on allegations that defendants are misappropriating and infringing on its proprietary software, eF&I Complete. CBC's action and motion are based on the following allegations, as set forth in the TRO:

Plaintiff CBC is a California corporation originally formed by Michael Green ("Mr. Green") in 2004. CBC provides car dealerships with access to credit reports for individual car purchasers. CBC is able to order credit reports from each of the three credit bureaus through a license held by Mr. Green ("bureau license"). Since 1988, Mr. Green has also been in the business of providing car dealerships with finance and insurance software through his sole proprietorship known as Automotive Marketing Profit Systems ("AMPS"). Defendant Data Consultants is wholly owned and operated by defendant Mr. Pardini. Data Consultants is also in the business of providing finance and insurance software to automobile dealerships.

Shortly after the formation of CBC, Mr. Green and Mr. Pardini agreed to pool their assets, and CBC became a joint venture between the two. According to their agreement, CBC would have access to Data Consultants' business infrastructure, including its employees and office space, while Data Consultants would have access to CBC's bureau license and contacts in the automobile industry. Mr. Pardini became a 50% shareholder, officer, and director of CBC.

CBC began to work with Darin Larsen ("Mr. Larsen"), a computer consultant working for Data Consultants. CBC paid Mr. Larsen directly for the time he spent working on CBC business, and Data Consultants paid Mr. Larsen separately for his Data Consultants work. In March 2006, Mr. Larsen, on behalf of CBC, began to develop a web-based software system that would integrate both the credit reporting as well as financial and insurance systems services. The project was authorized by Mr. Green and Mr. Pardini as officers and directors of CBC. In consideration of his efforts, Mr. Larsen became a twenty percent (20%) shareholder of CBC, with Mr. Pardini and Mr. Green each contributing ten percent (10%) of their respective interests in the company. Mr. Larsen was paid hourly for his work by CBC.

By July 2007, the integrated software known as eF&I Complete was ready to be sold. The development of the software was paid for entirely by CBC. Mr. Larsen provided the initial concept and

overall design. The source code and other technical aspects of the system were created by Data Consultants employees working under the direction and supervision of Mr. Larsen. CBC paid for the Data Consultants employees for the expense of the development of the project. Both CBC and Data Consultants marketed eF&I Complete under its individual name and for its own account.

In January 2008, CBC and Data Consultants came to the following agreement: the companies would split Mr. Larsen's salary equally; Data Consultants would pay CBC a 50% commission from all revenues generated from its use of the bureau license; CBC would pay Data Consultants 20% of all the revenues received from CBC customers as compensation for the use Data Consultants' administrative and technical support of eF&I Complete; and Data Consultants would pay CBC a total of $86,000 as reimbursement for a portion of CBC's costs with the development of eF&I Complete. The parties operated under this agreement for two years. As of the date this action was initiated, Data Consultants had paid $30,000 of the total $86,000 it promised to pay to CBC under the agreement.

From mid-2007 through early 2010, CBC contracted with individual automotive dealerships, automotive dealership groups, and national resellers who marketed the software. In addition, CBC and Data Consultants entered into multiple integrated agreements through which CBC and Data Consultants became jointly obligated to provide and support the software.

Beginning in early 2010, Mr. Pardini began to express his dissatisfaction with the compensation that he and Data Consultants received in connection with the support of eF&I Complete. The parties were unable to resolve the issue, and Mr. Pardini, Mr. Green, and Mr. Larsen agreed that the operations of CBC and Data Consultants should be separated completely. In April 2010, CBC acquired its own office space and personnel. At the same time, the CBC principals continued to discuss the details of the separation, including which company would have title to eF&I Complete and what compensation would be paid to the other for a perpetual license.

Although separation discussions were ongoing, all parties agreed that both companies would continue to have access to eF&I Complete. Unbeknownst to CBC, however, Mr. Pardini and Data Consultants converted the eF&I Complete software by blocking CBC's access to the features of the software that are necessary to demonstrate the software and to install information regarding new customers. In addition, Data Consultants employees have modified the software's administrative rights,

3

making it impossible for CBC's representatives to support existing customers in connection with their operation of the system. Moreover, Mr. Pardini has made statements to CBC's existing and prospective customers that only he and Data Consultants could provide and support the eF&I Complete software. CBC requested defendants to restore its access to all feature of eF&I Complete. Defendants have refused these multiple requests.

Based on these allegations, CBC contends that its ability to service its customers, integration partners and resellers has been jeopardized and that its entire business is threatened. CBC asserts that defendants' actions are interfering with CBC's ability to honor existing contracts and are causing the loss of current and prospective customers, goodwill, and prospective market share. CBC contends that its shareholder, director and officer, Mr. Pardini, breached his fiduciary duty of loyalty to CBC, and has intentionally interfered with valuable CBC contracts in a calculated effort to deprive the remaining CBC shareholders of their livelihood. CBC asserts the following eleven causes of action against defendants:

1. Breach of Fiduciary Duty;
2. Unfair Business Practices;
3. Intentional Interference with Existing and Prospective Economic Advantage;
4. Negligent Interference with Existing and Prospective Economic Advantage;
5. Conversion;
6. Unjust Enrichment;
7. Accounting;
8. Injunctive Relief;
9. Copyright Infringement;
10. Breach of Contract; and
11. Declaratory Relief.

**TRO**

In the TRO motion, CBC sought an order to enjoin defendants from, *inter alia*, restricting CBC's access to, or interfering in CBC's ability to use, eF&I Complete. The Court ordered defendants to respond to plaintiffs' motion no later than three court days after receiving the motion and complaint. Defendants opposed the motion, and submitted evidence in support of the opposition, including the

1  declaration of Mr. Pardini ("Pardini Decl.") and exhibits attached thereto, to support the following:

2  In 1980, Mr. Pardini formed a software company that specialized in providing financial and
3  insurance software catered to the automobile industry. The company eventually became Data
4  Consultants. Data Consultants has a successful software product called Grapevine, which was
5  developed over more than two decades, and is used by car dealerships to handle the finance and
6  insurance issues related to the selling and leasing of cars.

7  Mr. Pardini and Mr. Green joined forces in 2005. Each owned 50% of CBC, while maintaining
8  their separate companies. Mr. Pardini owned Data Consultants and Mr. Green owned AMPS. Prior to
9  entering into the CBC joint venture, Data Consultants owned the Grapevine software and had many
10 customers. Although AMPS had fewer customers, Mr. Green was authorized to resell to automotive
11 dealers throughout the United States. Mr. Pardini understood that by creating CBC, the new company
12 could take advantage of the volume discounts from the credit bureaus by combining credit bureau
13 customers of the two companies.

14 Mr. Larsen worked for Data Consultants from 1982 through 1997. Originally hired as a
15 programmer, Mr. Larsen eventually became General Manager of Data Consultants. Mr. Larsen was re-
16 hired in 2000. Data Consultants has paid Mr. Larsen monthly from 2000-2009.

17 In 2006, Mr. Larsen and Data Consultants programmers who worked on the project demonstrated
18 a prototype version of a web-based version of the Grapevine software. That prototype eventually was
19 developed into eF&I Complete. CBC did not pay for the development work that was done on the
20 prototype in 2006.

21 At a subsequent meeting, Mr. Pardini, Mr. Larsen, and Mr. Green agreed that Mr. Larsen would
22 become a CBC shareholder. The original agreement was that CBC would pay for the development of
23 the software by Data Consultant's employees and CBC would own the web-based software. CBC soon
24 discovered, however, that it did not have the revenue streams to support an expensive development
25 project over the long term. Before the end of 2007, CBC had stopped paying for the development of
26 eF&I Complete.

27 Mr. Pardini attached CBC's financial statements to support his position that CBC did not pay
28 for the cost of development of eF&I Complete. CBC's 2006 balance sheet shows investment in the

software totally around $5000 of "outside labor," a category later used to pay Data Consultants employees. Pardini Decl., Ex. A. 2007 CBC financial statements show a credit of $86,000 for outside labor costs. Mr. Pardini contends that the credit represents that Data Consultants agreed to pay back the $86,000 as "reimbursement for some of the expenses that has been incurred by CBC in developing eF&I Complete." No other expenses on the CBC balance sheets relate to software development.

Mr. Pardini submitted a "CBC Strategy Meeting Overview (1/16/2008)" that outlines "the key elements of understanding in bringing together the collective forces" of Data Consultants, CBC, and AMPS. Pardini Decl., Ex. B. According to the document, the parties agreed that, effective January 1, 2008, Data Consultants would pay back CBC for its costs related to eF&I Complete paid in 2007, and Data Consultants would own the software. Data Consultants is the organization "primarily responsible for," among other things, "R&D and product development," "Owns eF&I related products developed and supporting systems and software," and "Will provide a software license to CBC and Amps with provisions outlines below." *Id*. A separate point provides that Data Consultants would pay CBC a 50% commission from revenues generated by a separate software called eCredit, and "CBC will pay [Data Consultants] 20% commission of monthly billings to generally compensate for the cost of product development, support, forms, and related overhead." *Id*.

Data Consultants primarily funded the research and development of eF&I Complete. The $86,000 Data Consultants agreed to pay back represents costs paid by CBC from January through September 2007. Not only has Data Consultants paid back part of that money, but it also paid all other costs, including costs related to quality assurance, licenses for the software development tools, and computers used by the developers. Moreover, beginning in January 2008, Data Consultants has retained and paid programmers as full-time employees who have worked on the software, adding new functionality and features.

Mr. Pardini alleges that the parties have long agreed that Data Consultants owns eF&I Complete. To support his position, Mr. Pardini points to the January 16, 2008 CBC meeting notes. Mr. Pardini also submits a February 23, 2010 separation proposal, which he claims was submitted to him by CBC, that includes the following provision: "CBC will not have any rights to the non-credit related functionality of the existing eF&I Complete software." Pardini Decl., Ex. C. Email exchanges transmitted by CBC

6

in its declaration support the assertion that the parties contemplated that Data Consultants would own eF&I Complete.  *See*, Declaration of Kristi W. Dean ("Dean Decl."), Ex. 8-10.

CBC filed a reply on July 11, 2010, which this Court considered.

After considering the parties' positions on CBC's copyright, interference with economic relations, and unfair competition claims, this Court found that:

1. CBC failed to establish a likelihood of success on its claims of ownership of eF&I Complete, but did establish that it is likely to succeed on its claim that defendants are violating its unlimited, non-exclusive, and irrevocable license to use the software. Moreover, CBC establish a likelihood of success that defendants are interfering with existing and prospective economic relations; and

2. CBC established that it may suffer irreparable harm absent an injunction for loss of good will and market share for the eF&I Complete software.

Based on, *inter alia*, these findings, this Court ordered as follows:

For the foregoing reasons, this Court:

1. GRANTS CBC's motion for a temporary restraining order;
2. ORDERS CBC to file a bond with the clerk of this Court in the amount of $10,000.  The temporary restraining order outlined below shall not be effective until CBC has filed a bond in the above-specified amount with this Court;
3. ENJOINS defendants, including Mr. Pardini, Data Consultants, their agents, servants, employees, representatives, and all persons acting in concert or participating with them, from engaging in, committing or performing the following acts:
   a. Restricting CBC's access to, or interfering in CBC's ability to use any portion of the eF&I Complete software;
   b Changing the User ID or Password for the Master User Account Access on the hosting account used to access the administrative account;
   c. Changing the User IDs or Passwords used to access either the eF&I Complete live application server or the live database server;
   d. Changing the User IDs or Passwords used to access the administrative account functions at Rackspace;
   e. Changing the User IDs or Passwords used to access the eF&I Complete backup servers;
   f. Changing the Internet Protocol ("IP") Address where the domain name serve is currently pointing;
   g. Changing any of the eF&I Complete source code, except that they may make minor changes to the source code as necessary to fix an error that causes material harm to customers;
   h. Deleting anything from the live database or application server;
   i. Further unlawful interference with any existing contracts between CBC and its customers; and
   j. Making representations to CBC's existing or potential customers that CBC does not have use rights to eF&I Complete;

4. ENJOINS defendants, including Mr. Pardini, Data Consultants, their agents, servants, employees, representatives, and all persons acting in concert or participating with them, within five days of the date the bond is filed with this Court, to:

 a. Provide CBC access to all eF&I Complete functionalities of the CBC demo user account; and

 b. Revise the source code on the CBC Support Tool software program to restore the access rights for all CBC personnel User Ids to enable CBC the ability to set up new eF&I Complete customers;

5. ORDERS this restraining order to remain effective for fourteen (14) days after the date the order is issued; and

6. ORDERS defendants to show cause in writing, no later than July 23, 2010, why this Court should not issue a preliminary injunctive in this action to remain in effect until the issues in this action are resolved. If defendants choose to show cause why this Court should extinguish this Court, defendants must submit evidence and argument beyond that which is presented in opposition to the instant motion. This Court shall discharge the show cause order if, no later than July 23, 2010, defendants file and serve a statement of consent to an extension of this restraining order.

CBC posted a $10,000 bond with the clerk of this court on June 13, 2010 to comply with the June 12, 2010 order. The TRO was to remain in effect for 14 days.

## **Defendants' Motion for Reconsideration**

Defendants moved for reconsideration of the TRO on July 17, 2010. Defendants' reconsideration was focused almost exclusively on their position that the TRO inappropriately gave CBC access to the eF&I Complete source code. Defendants asserted that CBC never had access to the source code or the requested User IDs and passwords at issue in the TRO, and to require defendants to provide that information would cause defendants irreparable harm.

This Court ordered defendants to provide additional briefing to explain how the terms of the TRO allowed CBC access to the source code, to address specific concerns about the provisions of the TRO, and to propose specific changes to the TRO. In response, defendants request that items 3(b)-(e), (g), and (j) be removed from the TRO and items 3(a) and (f); and 4(b) be modified. In addition, defendants requested this Court to include the following terms:

1. Order Plaintiff to state whether or not they have made copies of the source code for eF&I Complete, and if they have made such copies, to inform the court how many copies were made and the identifies of all persons who have had access to those copies.

2. Order Plaintiffs not to interferee with any existing contracts between Data Consultants and its customers, and Plaintiffs are not to represent that they are Data Consultants employees.

8

**CBC's Opposition to defendants' Motion for Reconsideration**

CBC maintains that the status quo prior to the February 2008 breakdown in relations between the parties was that both parties had equal access to the software, including the source code and customer information, and equal right to compete for business to sell the software. CBC claims that it has enjoyed equal access to eF&I Complete until defendants locked them out in June 2010. CBC explains that it requires access to the source code to set up new customers.

CBC further explains that once the parties began to separate in February 2010, the source code was separated and stored in two places–one code for the credit functionalities, eCredit, to be owned by CBC and one code for the finance and insurance functionalities, eF&I, to be owned by Data Consultants–each having rights to the other under express conditions. The parties have been unable to work out the conditions, and thus, both maintain rights to eF&I Complete until an agreement is reached.

CBC explained that it is willing to adhere to a preliminary injunction order, and requests the Court to include the TRO terms in a preliminary injunction. In addition, CBC suggests the Court including the following provisions in its preliminary injunction:

1. Provide for a reciprocal noninterference between CBC and Data Consultants in the use and marketing of eF&I Complete.
2. Neither party shall utilize the customers database information to solicit unfairly the others' customers in accordance with California law.
3. Neither party shall take steps to change the access credentials to the hosting service at The Planet or change the IP address of the domain name servers that points to where the eF&I software resides.

**Defendants' Response to Order to Show Cause**

Defendants argue that the status quo is represented by a February 23, 2010 "binding agreement," and that the preliminary injunction should be based on the this memorandum. Defendants claim that February 23, 2010 CBC board minutes memorialize a separation agreement between the parties that Data Consultants owns eF&I Complete. Paradoxically, defendants also characterize this "agreement" as suggested terms of separation proposed by CBC to Mr. Pardini–terms that were never agreed to by either party or implemented. In the alternative, defendants argue that the Court should find the "agreement"

9

to be binding based on the notion of promissory estoppel. Plaintiffs challenge the enforceability of February 23, 2010 memorandum, claiming that February 23, 2010 document was merely a summary of proposed terms of a separation agreement, and that the separation agreement discussions subsequently broke down prior to an agreement on the proposal.

## Mediation

This Court found good cause to suggest mediation between the parties to discuss the terms of the preliminary injunction. The parties agreed. On July 27, 2010, the parties appeared at a mediation before United States Magistrate Judge Dennis L. Beck. The next day, the parties indicated to this Court that an agreement regarding the terms of the preliminary injunction had been reached, and that they were working towards finalizing that agreement. On the basis of good cause, this Court extended the TRO through July 30, 2010, and ordered the parties to file a written agreement with this Court no later than July 30, 2010. This Court admonished the parties that if no written agreement was filed with this Court on or before July 30, 2010, this Court would rule on the pending matters without a hearing, and would order defendants to show cause why this Court should not impose sanctions for defendants' failure to comply with this Court's TRO. No agreement was filed.

## Defendants Request for Injunctive Relief

On August 1, 2010, filed a request for injunctive relief based on "newly-acquired evidence." Defendants argue that on July 29, 2010, defendants obtained confirmation that Mr. Larsen is employed by CBC. In support of this contention, defendants attach an internet "chat" conversation indicating that Mr. Larsen has a CBC email address. In the chat, Mr. Larsen is communicating with Jason Hickingbottom ("Mr. Hickingbottom"), and asks Mr. Hickingbottom to send him "the cbc and the cam directories" of the "source." Defendants further submit a Data Consultants termination certification, signed by Mr. Larsen on April 29, 2010. In the termination certification, Mr. Larsen certified that he had no CBC "confidential information," would comply with the CBC "Employee Confidential Information Agreement," and would preserve as confidential all of CBC's proprietary and "Confidential Information."

Defendants argue that Mr. Larsen is in breach of his agreements with Data Consultants, and should include in the preliminary injunction a provision to enjoin Mr. Larsen from working for CBC for

1 a period of one year. In addition, defendants assert that Mr. Larsen has knowledge of Data Consultants'
2 trade secrets and that he assigned expressly all of his rights in the intellectual property to Data
3 Consultants. Defendants conclude that to protect Data Consultants' intellectual property and contractual
4 rights and the preserve the status quo, the preliminary injunctive order should include a provision to
5 enjoin Mr. Larsen from using Data Consultants' confidential information and trade secrets, from
6 working for CBC, and that CBC be prevented from accessing or using Data Consultants' protectable
7 trade secrets embedded and embodied in the eF&I Complete software.

## STANDARDS OF REVIEW

### Reconsideration

10 The Court has discretion to reconsider and vacate a prior order. *Barber v. Hawaii*, 42 F.3d 1185,
11 1198 (9th Cir.1994); *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 396 (9th Cir.1992). Motions for
12 reconsideration are disfavored, however, and are not the place for parties to make new arguments not
13 raised in their original briefs. *Northwest Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918,
14 925-6 (9th Cir.1988). Nor is reconsideration to be used to ask the court to rethink what it has already
15 thought. *United States v. Rezzonico*, 32 F.Supp.2d 1112, 1116 (D.Ariz.1998). "A party seeking
16 reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the
17 cases and arguments considered by the court before rendering its original decision fails to carry the
18 moving party's burden." *U.S. v. Westlands Water Dist.*, 134 F.Supp.2d 1111, 1131 (E.D.Cal.2001).

19 Motions to reconsider are committed to the discretion of the trial court. *Combs v. Nick Garin*
20 *Trucking*, 825 F.2d 437, 441 (D.C.Cir.1987); *Rodgers v. Watt*, 722 F.2d 456, 460 (9th Cir.1983) (en
21 banc). To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court
22 to reverse its prior decision. *See Kern-Tulare Water Dist. v. City of Bakersfield*, 634 F.Supp. 656, 665
23 (E.D.Cal.1986), *affirmed in part and reversed in part on other grounds*, 828 F.2d 514 (9th Cir.1987).

### Preliminary Injunction

25 The same standards generally apply to temporary restraining orders and preliminary injunctions.
26 *Northeast Ohio Coalition for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467
27 F.3d 999, 1009 (6th Cir. 2009). A "preliminary injunction is an extraordinary and drastic remedy."
28 *Munaf v. Geren*, 552 U.S. 674, 128 S. Ct. 2207, 2219 (2008). As such, the Court may only grant such

relief "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat'l Res. Def. Council, Inc.*, 129 S.Ct. 365, 375 (2008). To prevail, the moving party must show : (1) a likelihood of success on the merits; (2) a likelihood that the moving party will suffer irreparable harm absent a preliminary injunction; (3) that the balance of equities tips in the moving party's favor; and (4) than an injunction is in the public interest. *Id*. at 374. In considering the four factors, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 129 S.Ct. at 376 (quoting *Amoco Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531 542 (1987)); *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 651 (9th Cir. 2009).

As set forth in *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009), a "preliminary injunction can take two forms:"

> A prohibitory injunction prohibits a party from taking action and "pre-serve[s] the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988); *see also Heckler v. Lopez*, 463 U.S. 1328, 1333, 104 S. Ct. 10, 77 L. Ed. 2d 1431 (1983) (a prohibitory injunction "freezes the positions of the parties until the court can hear the case on the merits"). A mandatory injunction "orders a responsible party to 'take action.'" *Meghrig v. KFC Western.*, 516 U.S. 479, 484, 116 S. Ct. 1251, 134 L. Ed. 2d 121 (1996). A mandatory injunction "'goes well beyond simply maintaining the status quo [p]endente lite [and] is particularly disfavored.'" *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980) (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)).

Both parties seek prohibitory and mandatory injunctive relief. These requests will be considered accordingly.

## DISCUSSION

### Reconsideration of the TRO

In the motion for reconsideration, defendants raise new arguments not addressed in opposition to the TRO motion related to the public interest, the amount of the bond, and irreparable harm to defendants. In addition, defendants' legal argument relies primarily on a February 2010 document that defendants argue is an enforceable agreement between the parties. Defendants assert this document is "new evidence," but do not, and cannot, argue that it was "newly discovered."

To explain why the February 2008 document, the legal theories based on the document, and the new arguments were not submitted in opposition to the TRO motion, defendants argue that they were

1  given very short notice of the CBC's TRO motion. Although this Court could have ruled on CBC's
2  TRO without notice or a response from defendants, Fed. R. Civ. P. 65(b)(1), this Court sua sponte
3  ordered CBC to serve the complaint and motion on defendants. In addition, this Court sua sponte
4  granted defendants an opportunity to oppose the TRO motion. This Court allowed defendants to file an
5  opposition three days after CBC served them with the complaint and TRO motion. CBC filed
6  certificates of service indicating that Mr. Pardini was served by mail on July 2, 2010 and Data
7  Consultants was served by mail on July 6, 2010. Defendants opposed the motion on July 8, 2010. Thus,
8  defendants filed the opposition earlier than the Court's deadline. In addition, defendants' opposition
9  contained no indication that the defendants were unable to work within the time limit, and defendants
10 failed to request additional time to address the issues raised in CBC's TRO motion.

11 Based on the foregoing, this Court finds that defendants failed to show good cause why the new
12 arguments and evidence were not raised in its opposition. Defendants' arguments fail to meet the
13 reconsideration standards set forth above. Defendants reconsideration motion amounts to a disagreement
14 with this Court's order based on evidence and arguments defendants failed to submit to this Court in
15 opposition. Defendants' reconsideration motion fails to meet the well-settled reconsideration standards.
16 *See, e.g., Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Accordingly,
17 this Court denies defendants' reconsideration motion.

18 The Court denies defendants' reconsideration motion on the alternative grounds that the motion
19 is moot. The TRO is no longer in effect, as it expired on July 30, 2010. Because the TRO is no longer
20 enforceable against defendants, defendants' motion to reconsider the TRO is moot.

21 **Order to Show Cause**

22 The TRO was issued on July 12, 2010. The TRO was to take effect after CBC filed a bond with
23 the clerk of this Court, and was set to expire14 days after the date of filing. The TRO expired on July,
24 26, 2010, but the Court extended the TRO from July 28, 2010 through July 30, 2010.

25 CBC has indicated in its documents that defendants have failed to comply with both the
26 prohibitive and mandatory provisions of the TRO. In their documents, defendants have left these
27 accusations unaddressed. Nevertheless, defendants' arguments and requests indicate that defendants
28 have not complied with the TRO. Although defendants filed a reconsideration motion, defendants failed

to file a motion to stay enforcement of the TRO. Accordingly, the TRO was in effect during the dates set forth above.

On the basis of good cause, this Court orders defendants to show cause in writing, **no later than August 12, 2010,** why this Court should not impose sanctions for violation of this Court's TRO.

## **Preliminary Injunction**

This Court addressed the merits of CBC's claims in its TRO. For the reasons therein discussed, this Court found that CBC failed to establish a likelihood of success on its claims of ownership of eF&I Complete, but did establish that it was likely to succeed on its claim that defendants are violating its unlimited, non-exclusive, and irrevocable license to use the software. Moreover, this Court found that CBC established it's a likelihood of success on its claims that defendants are interfering with existing and prospective economic relations. In addition, this Court found that CBC had established that it may suffer irreparable harm absent an injunction for loss of good will and market share for the eF&I Complete software. Based on these and other considerations, this Court found good cause to issue a TRO, and ordered defendants to show cause why a preliminary injunction should not issue.

After the mediation and the parties' subsequent briefs, it is clear that both parties agree that this Court should issue some sort of preliminary injunction. Defendants no longer move to extinguish the TRO fully. Rather, defendants argue that this Court should modify some of the provisions of the TRO and include additional provisions to the preliminary injunction. Further, defendants request injunctive relief in their favor. This Court addresses the relevant arguments and provisions below.

## **Source Code Access**

Primarily, defendants seek to modify provisions of the TRO to prevent CBC unfettered access to the eF&I Complete source code. Defendants argue that CBC's access to the source code would cause defendants irreparable harm. Defendants argue further that CBC never had access to the source code, and do not need access to the source code.

This Court requested additional briefing from defendants on the source code issue, based on the following:

> This Court found that although defendants successfully disputed ownership of the copyright, CBC established a likelihood of success on its claim that defendants are violating its unlimited implied license to the software and are interfering with CBC's

14

existing and prospective economic relations. The parties' arguments, and the Court's order, related to whether CBC' implied license provided unlimited use of the software; the parties did not argue, and this Court did not consider, whether CBC had unlimited access to the source code. After balancing the appropriate factors, this Court issued a TRO to: (1) maintain the status quo existing at the time prior to the dispute; (2) allow CBC to service existing clients; (3) allow CBC to create new eF&I Complete clients; and (4) prevent defendants from interfering with CBC's ability to service existing clients and establish new clients.

CBC neither requested access to the eF&I Complete source code nor argued that it required access to the source code to maintain the status quo. Rather, as provided in the mandatory section of the TRO, this Court ordered defendants to:

> Revise the source code on the CBC Support Tool software program to restore the access rights for all CBC personnel User Ids to enable CBC the ability to set up new eF&I Complete customers.

TRO, p. 22. This provision contemplated that defendants only would have access to the source code and would revise the source code to allow CBC the ability to set up new customers. No provision of the mandatory TRO requires defendants to provide CBC access to the eF&I Complete source code.

In response, defendants (through a declaration from Mr. Pardini) explain how the TRO may allow CBC access to the source code.

In its opposition, CBC argues that the status quo ante allowed CBC to access the software, including the source code. CBC asserts that it requires access to the source code, because it must modify the source code as needed to service its customers. In its response, CBC submitted a declaration from Mr. Larsen. Mr. Larsen avers that he never had access to Data Consultant's Grapevine source code. In addition, Mr. Larsen submits that he believes CBC owns eF&I Complete, including its source code, because Mr. Larsen designed it, oversaw and controlled the writing of the source code, CBC paid for it, and CBC and Mr. Larsen always had access to the source code. This Court addressed CBC's ownership arguments in its TRO.

To resolve the issue of whether CBC should have access to the source code, the Court considers the evidence to determine the status quo between the parties prior to the dispute. The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830 (1981). "Status quo" means the last uncontested status that preceded the pending controversy. *See, GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000).

In its TRO, this Court found that "the status quo allowed both parties equal access to the software prior to the disagreement and breakdown between the parties. In addition, Mr. Pardini presents no evidence that he or Data Consultants would be harmed if this status quo were preserved until this litigation is resolved. Accordingly, the balance of equities tips in favor of injunctive relief."

Having considered defendants' arguments and further evidence, including the declarations of Mr. Pardini and Mr. Larsen, this Court finds that the status quo is as follows: Prior to the breakdown between the parties, CBC competed with Data Consultants by selling eF&I Complete under its own name. CBC would notify Data Consultants of the new customer because CBC and Data Consultants had an agreement that Data Consultants would provide customer service to CBC's new customer. Data Consultants accepted a 20% servicing fee, and provided customer service to CBC's customers.

There is no evidence that CBC requested Data Consultants' permission to sign a new customer, or that Data Consultants retained the right to reject CBC's new customer request, as defendants suggest.

This Court cannot determine whether CBC had unfettered access to the source code. Mr. Larsen contends that he had access to the source code; however, it is unclear whether Mr. Larsen accessed the source code as a Data Consultants' employee (as defendants' argue) or as a CBC shareholder (as CBC suggests). This is question of fact that this Court cannot determine at this stage.

As the moving party, CBC bears the burden to establish the likelihood of success on its claims. Because this Court cannot determine whether CBC had unfettered access to the source code, CBC fails to meet its burden on this issue. In addition, CBC has failed to establish that it requires access to the source code to maintain the status quo. As set forth above, the parties agree that once CBC gained a new customer, Data Consultants would service CBC's clients. CBC requests access to the source code to allow CBC the ability to service its clients; however, the undisputed evidence suggested that CBC never serviced its own clients and that Data Consultants provided the service. Accordingly, this Court finds that CBC does not require access to the eF&I Complete source code to maintain the status quo, and modifies the provisions of the TRO to prohibit access.

**User ID and Password Access**

Defendants requested that this Court delete sections 3(b)-(e) of the TRO. These sections prohibit defendants from changing the User IDs or Passwords on a variety of accounts. In its order for additional

briefing, this Court found:

> With respect to sections 3(b)-(e), defendants' memorandum and Mr. Pardini's declaration set forth apparently contradictory positions. On the one hand, defendants argue that CBC never had access to the User Ids and Passwords that this Court prohibited defendants from changing in the TRO. On the other hand, defendants argue that the prohibitive TRO grants CBC access to the source code and allows CBC to access, alter, and appropriate the source code for its own use. An order to prohibit changing the User Ids or Passwords to accounts that CBC never had access does not grant CBC access to those accounts.

In response, defendants contend that since CBC never had access to the User IDs and Passwords, these provisions should not be included in the TRO. This Court agrees.

CBC has failed to carry its burden to provide that CBC had access to, or requires access to, this information. Although Mr. Larsen claims that he had access to this information, it is disputed whether he had access as a Data Consultants employee or a CBC shareholder. Accordingly, this Court shall remove these provisions from the order.

### Enforcement of February 2010 document

Defendants argue that the preliminary injunction should include provisions to enforcement a February 2010 "agreement" between the parties. That "agreement" appears on CBC stationary, and is entitled "Confidential for Mike Green, Bill Pardini, Darin Larsen February 23, 2010." The document is unsigned. The document contains 25 enumerated provisions that appear to be a proposal for the separation of CBC and Data Consultants.

Defendants argue that this document is an enforceable agreement between the parties according to various legal theories. Defendants characterize the document several ways, depending on its argument. Defendants assert that the document was a proposal written by Mr. Green and Mr. Larsen and submitted to Mr. Pardini. Defendants contend that this document are CBC corporate minutes. Defendants assert that this was a separation agreement between the parties. In the alternative, defendants argue the document represents a firm offer by CBC to defendants, and should be enforced based on the notion of promissory estoppel.

The Court rejects defendants' position that the February 2010 document is an enforceable agreement. The parties dispute the context of the document and this Court cannot determine whether it is an enforceable agreement at this stage of the litigation. Defendants assertions are contradictory and

confused. Moreover, the positions taken by Mr. Pardini provide support for CBC's breach of fiduciary claim against him. Accordingly, this Court declines to include provisions of the February 2010 document in its preliminary injunction.

### Defendants Request for Injunctive Relief

Defendants request certain affirmative provisions in the preliminary injunction, including:

1. Order Plaintiff to state whether or not they have made copies of the source code for eF&I Complete, and if they have made such copies, to inform the court how many copies were made and the identifies of all persons who have had access to those copies.
2. Order Plaintiffs not to interfere with any existing contracts between Data Consultants and its customers, and Plaintiffs are not to represent that they are Data Consultants employees.
3. Include a provision to enjoin Mr. Larsen from working for CBC for a period of one year;
4. Include a provision to enjoin Mr. Larsen from using Data Consultants' confidential information and trade secrets,.
5. Including a provision to prevent CBC from accessing or using Data Consultants' protectable trade secrets embedded and embodied in the eF&I Complete software.
6. Require CBC to seek Data Consultants' permission prior to contracting with a new customer.

This Court rejects defendants' request for injunctive relief, because defendants request injunctive relief on the basis of claims they have not asserted against CBC. Defendants have no counterclaims against CBC. Thus, this Court cannot consider the relevant factors (i.e., likelihood of success, irreparable harm, public interest, and balance of the equities) as to claims not asserted. In addition, the Court denies the first request (to order plaintiff to state whether or not they have made copies of the source code), because the Court finds that this is the subject of discovery, not a preliminary injunction. Moreover, the Court rejects defendants' requests related to Mr. Larsen, as Mr. Larsen is not a party to this action.

This Court agrees with defendants' position that the preliminary injunction should be crafted so that CBC will be unable to appropriate the eF&I Complete source code until the issues related to this litigation have been resolved. Although this Court disagrees with defendants' request to require CBC

to seek Data Consultants' permission to gain a new customer, this Court does find that the status quo requires CBC to contract with Data Consultants to service any new customers it acquires.

## Conclusion and Order

Having considered the parties' arguments, exhibits, and requests, this Court:

1. ENJOINS defendants, including Mr. Pardini, Data Consultants, their agents, servants, employees, representatives, and all persons acting in concert or participating with them, from engaging in, committing or performing the following acts:

   a. Restricting CBC's access to, or interfering in CBC's ability to use any portion of the eF&I Complete software, except that CBC, its agents, servants, representative, and all persons acting in concert or participating with them, are prohibited from accessing, copying, appropriating, or distributing, or using the source code to that software;

   b. Restricting CBC's access to its customer lists that are located on any serves or administrative accounts;

   c. Changing any of the eF&I Complete source code, except that they may make minor changes to the source code as necessary to fix an error that causes material harm to customers, and may modify the source code as necessary to service existing and new customers of CBC and Data Consultants;

   d. Deleting anything from the live database or application server; and

   e. Making representations to CBC's existing or potential customers that CBC does not have use rights to eF&I Complete;

2. ENJOINS defendants, including Mr. Pardini, Data Consultants, their agents, servants, employees, representatives, and all persons acting in concert or participating with them, to:

   a. Provide CBC access to all eF&I Complete functionalities of the CBC demo user account;

   b. Revise the source code on the CBC Support Tool software program to restore the access rights for all CBC personnel User Ids to enable CBC the ability to set up

new eF&I Complete customers;

    c.    Continue to provide service to CBC's existing clients; and

    d.    Provide customer service to CBC's new customers, if any, provided that CBC pays a 20% servicing fee.

3. ORDERS defendants, including Mr. Pardini, Data Consultants, their agents, servants, employees, representatives, and all persons acting in concert or participating with them, and plaintiff CBC, its agents, servants, representative, and all persons acting in concert or participating with it, as follows:

    a.    CBC and Data Consultants must maintain reciprocal noninterference in the use and marketing of eF&I Complete;

    b.    Neither party shall utilize the customers database information to solicit unfairly the others' customers in accordance with California law; and

    c.    Neither party shall take steps to change the access credentials to the hosting service at The Planet or change the IP address of the domain name servers that points to where the eF&I software resides.

4. This preliminary injunction shall remain in effect until this Court orders otherwise.

IT IS SO ORDERED.

Dated:   **August 2, 2010**              **/s/ Lawrence J. O'Neill**
                                             UNITED STATES DISTRICT JUDGE