# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

CREDIT BUREAU CONNECTION, INC.,      CASE NO. **CV F 10-1202 LJO DLB**

    Plaintiff,

vs.      **ORDER TO APPROVE INTERIM AGREEMENT**

WILLIAM PARDINI and B.T.B. INC.,
d.b.a. Data Consultants,

    Defendants.
_____/

The parties submitted an interim agreement that, among other things, modifies this Court's preliminary injunction. Having read and reviewed the interim agreement, and for good cause appearing, this Court APPROVES the following interim agreement, which shall become an ORDER of this Court:

## INTERIM AGREEMENT

THIS INTERIM AGREEMENT (this "Agreement") is made and entered into as of this 29th day of November, 2010 (the "Effective Date") by and between B.T.B., Inc. dba Data Consultants ("Data Consultants") and Credit Bureau Connection, Inc. ("CBC") (jointly referred to as "Parties") regarding the separation of certain source code and data which is at issue in the litigation and Preliminary Injunction (both defined below).

WHEREAS, CBC filed a complaint as plaintiff against Data Consultants and William Pardini, in United

1  States District Court, Eastern District of California, Case No. 1: 10-cv-01202-LJO (the "CBC/Pardini
2  District Court Action");

4  WHEREAS, CBC moved for a temporary restraining order and a preliminary injunction, and a
5  preliminary injunction issued on August 2, 2010 (the "Preliminary Injunction");

7  WHEREAS, CBC and Data Consultants are engaged in a dispute with respect to, among other items,
8  the ownership of certain software that provides finance and insurance services as well as credit reporting
9  services to automotive dealerships.  For purposes of this Agreement, "eF&I" shall mean the portion of
10 the Internet software that provides finance and insurance services which is also referred to as eF&I
11 Complete, and "eCredit" shall mean that portion of the Internet software that provides credit reporting
12 services and is also referred to as eCredit.  The data related to each shall be referred to herein as the
13 "eF&I Data" and the "eCredit Data", respectively.

15 WHEREAS, prior to the issuance of the Preliminary Injunction, CBC and Data Consultants discussed
16 an arrangement that would allow CBC and Data Consultants to separate the eF&I source code and data
17 from the eCredit source code and data so that the two components would be capable of being located
18 on separate servers (the former controlled by Data Consultants and the latter controlled by CBC), the
19 associated live customer data would no longer be shared and the software components could be operated
20 together with the same features that CBC and Data Consultants' customers have received over the past
21 few years;

23 WHEREAS, in July of this year, Data Consultants and CBC held a mediation where they discussed a
24 plan to separate the eCredit source code and data from the eF&I source code and data pending the
25 resolution of this litigation with all rights reserved for both parties;

27 WHEREAS, subsequent to the issuance of the Preliminary Injunction, the parties have been negotiating
28 an Interim Agreement but the agreement was not going to be implemented in time for CBC to meet its

business objectives;

WHEREAS, CBC will utilize the eCredit source code it was previously given by Data Consultants and will not require an update of the eCredit source code as previously contemplated in this Interim Agreement;

WHEREAS, the Parties now desire to finalize the Interim Agreement pursuant to the terms and conditions contained herein.

NOW THEREFORE, the Parties hereby agree as follows:

**I.     Separation Plan**.  The separation of the eF&I source code from the eCredit source code and all related data will be accomplished pursuant to the schedule set forth below.  At all times until Phase 3 is complete, Data Consultants shall ensure that the backup servers located at Rackspace shall remain live and in synch with the live source code and data servers currently residing at The Planet, and at all times until CBC's Verification (defined below), Data Consultants shall maintain back-up copies of the eF&I source code, the eCredit source code (and the eSignature and Driver's License Scanner source code in the event that they are not included within eCredit), the eF&I Data, the eCredit Data and all other source code, data and information in any form that relates to eF&I and eCredit, and Data Consultants.

      A.     Phase 1: DC Provides CBC Daily Snapshots of the eCredit Data

          (1) By close of the fourth business day subsequent to the execution of this agreement, Data Consultants shall provide CBC with a snapshot of the live eCredit Data and will thereafter continue to make the eCredit Data available to CBC until the completion of Phase 3.  Specifically, Data Consultants will set up a database that CBC can access on a read-only basis (the "eCredit Database"). At that time, Data Consultants shall provide CBC the username, password and all credentials required to access the eCredit Database.  Data Consultants shall not revise the username, password or any access credentials or deny CBC access to the eCredit Database until the completion of Phase 3.  The contents of the eCredit Database will be the eCredit data identified in Section E below.  Data Consultants will

also set up a program that updates the eCredit Database once a day. The eCredit Database will be updated daily between 12:30 a.m. and 3:30 a.m. daily, or at some other mutually agreeable time. CBC acknowledges that it understands that during this phase, the data CBC will be accessing will not be updated continuously, and will only be updated once per day.

      B.      Phase 2: DC and CBC Develop an Interface to CBC's New eCredit Code

           (1)      After Phase 1 has been implemented and is working, CBC and Data Consultants will develop an interface so that Data Consultants customers who request eCredit data can retrieve that data from the new CBC eCredit servers. During this phase, Data Consultants may move the eF&I source code and data to its new servers.

      C.      Phase 3: The Separation

           (1)      Within fourteen (14) days of the completion of Phase 1, a final live update of the eCredit Data will be made available to CBC and then there will be a switchover such that the eF&I source code and eF&I Data will be on Data Consultant's server and the eCredit source code and eCredit Data will be on CBC's server.

           (2) As part of this Phase 3, software will be put in place on both parties' servers so that all Data Consultants eF&I customers will access eF&I through the Data Consultants URL and all CBC eF&I customers will be redirected to the Data Consultants URL via automatic redirection from the CBC website or will have direct entry from the Data Consultants URL. Upon normal logout of eF&I, all CBC customers will automatically be redirected back to whatever web site directed them to the Data Consultants web site. Data Consultants will provide commercially reasonable support to CBC's customers to implement this transition for such items as browser settings, Adobe settings, or any other requirements for eF&I to function as it has functioned for CBC's customers during the past few years, provided, however, that in no event shall Data Consultants provide CBC's customers support at a level less than Data Consultants has provided its own customers during this transition. Notwithstanding the foregoing, CBC will contact its eF&I customers and work with them to support the transition to the new servers.

      D.      Phase 4: Shutting Down the Existing Planet Servers

           (1) After Phase 3 has been completed, Data Consultants will be free to shut down the

existing Planet servers. Starting with the next billing cycle after Phase 3 has been completed, CBC will no longer be responsible for any fees owed to the Planet for use the existing servers.

    E.    Definition of eCredit Data:

(1) The specific tables that constitute the eCredit Data are identified in Schedule A to this Agreement.

    F.    No Support Obligation

Throughout this separation process and thereafter, CBC shall be permitted to maintain, update, manage, edit, modify, change, access, copy, appropriate, distribute and use its version of the eCredit source code without limitation. Provided that this Interim Separation Agreement is complied with, Data Consultants has no support obligations to CBC for CBC's version of the eCredit source code during this process or going forward.

**II.    eCredit Source Code.**

    A.    CBC understands and acknowledges that the copy of eCredit source code that Data Consultants provided CBC in July was provided on an "as is" basis without warranties, except as expressly provided herein. CBC further acknowledges that Data Consultants will not be responsible for developing new eCredit source code for CBC, or for debugging or supporting CBC's use of the eCredit source code after the execution of this Agreement. Data Consultants represents and warrants that it had not undertaken any act or omission to restrict, minimize or damage the eCredit source code delivered to CBC in July or degrade its functionality.

    B.    The parties recognize and acknowledge that the purpose of this Agreement is to allow the companies to separate their activities prior to the resolution of their disputes and to do so without an interruption of service or degradation of functionality to customers.

    C.    The parties dispute whether eSignature and the Drivers' License Scanner are part of eCredit. Data Consultants shall retain back up copies of the eSignature source code and the Drivers' License Scanner source code until this matter is resolved either through a court order or mutual agreement of the parties. In lieu of the source code for eSignature and the Driver's License Scanner, upon the execution of this Agreement, Data Consultants shall deliver executable versions of eSignature and the Driver's License Scanner and their respective installation utilities, if any. In addition, Data

Consultants will provide CBC the source code to the support tool for just the eCredit functionality.

///

**III    eF&I Data and eCredit Data.**

  A. Should there be a dispute about whether or not the data provided by Data Consultants is accurate and complete, CBC will provide Data Consultants written notice (via email, facsimile or first class or regular mail) that the data is inaccurate or incomplete ("Notice of Missing Data") and Data Consultants shall have two business days to deliver accurate and complete data to CBC. If Data Consultants fails to provide accurate and complete data within 48 hours of receipt of CBC's Notice of Missing Data, the parties agree to resolve the dispute through binding mediation in front of Judge Beck. If the parties are unable to resolve a dispute under this Paragraph III(A) through mediation with Judge Beck, CBC shall be entitled to seek any remedy available at law without limitation.

  B. The parties acknowledge and agree that after the separation contemplated by this Agreement, CBC will not have access to the eF&I Data residing on Data Consultants' servers and Data Consultants will not have access to the eCredit Data residing on CBC's servers. The parties further acknowledge that they will have separate backup servers after the separation. Neither party waives their rights to seek access to the eF&I Data and eCredit Data in the future.

**IV.    Independent Technical Expert**: Data Consultants reserves the right to request an independent technical expert to perform a technical analysis of compliance with this Agreement if it becomes necessary to do so.

**V.    Term**. This Agreement will commence of the Effective Date and shall continue until the sooner of (a) a court order contrary to the terms of this Agreement, (b) resolution of the CBC/Pardini District Court Action, (c) mutual agreement by the parties. Upon termination, any rights or obligation under this Agreement that are contrary to the relevant court order, resolution or mutual agreement shall immediately terminate and be of no further force or effect.

**VI.    Default.** If there has been a default under this Agreement and such default remains uncured for a period of five (5) business days after the non-defaulting party provides the defaulting party notice of such default with a writing conspicuously captioned "NOTICE OF DEFAULT", the non-defaulting party shall be entitled to injunctive relief to enforce the terms of this Agreement.

**VII.** **No Waiver or Admission**. This Agreement shall not be deemed a waiver of either party's rights to assert any claim of ownership or seek damages or injunctive or other equitable relief in the CBC/Pardini District Court Action. The failure of any party to insist upon compliance with any of the provisions of this Agreement or the waiver thereof, in any instance, shall not be construed as a general waiver or relinquishment by such party of any other provisions of this Agreement. Nothing contained herein shall be deemed an admission of any facts.

**VIII.** **Amendment.** This Agreement may not be amended except by an instrument in writing, executed by each of the parties.

**IX.** **Modification of Preliminary Injunction.** It is the intention of the parties to amend sections 1(d) and 3(c) of the Preliminary Injunction only as specifically set forth herein provided that no party is in breach of its obligations under this Agreement. Other than the narrow amendments to the Preliminary Injunction specifically provided herein, nothing contained herein shall modify the Preliminary Injunction or the parties' obligations to comply with the Preliminary Injunction. This Agreement shall not be effective until the parties have secured the Court's consent to amend the Preliminary Injunction as described in this Agreement.

**X.** **Multiple Counterparts.** This Agreement may be executed in multiple counterparts that shall become effective to the same extent as the original only when every party has signed and delivered a signed counterpart. For purposes of the execution of this Agreement, signature pages transmitted by facsimile or email shall be given the same weight and effect as, and treated as, original signatures.

**XI.** **Choice of Law, Jurisdiction and Venue.** The parties agree that any dispute arising under this Agreement is inextricably linked to the CBC/Pardini District Court Action and that any dispute between the parties regarding the interpretation or enforcement of this Agreement shall be addressed in and become a part of the CBC/Pardini District Court Action and the parties hereby consent to the jurisdiction and venue of the CBC/Pardini District Court Action wherever it may be. The parties further agree that in the event that there is a dispute with respect to the interpretation or enforcement of this Agreement or any matter arising under this Agreement, the parties will first attempt to mediate such dispute with Magistrate Judge Beck, unless seeking injunctive or equitable relief.

**XII.** **Injunctive Relief.** The parties acknowledge and agree that injunctive or other equitable

remedies are appropriate to enforce the terms of this Agreement and either party shall be entitled to injunctive relief to enforce the terms of this Agreement.

**XIII.   Time of the Essence.**  The parties agree that time is of the essence with respect to the provisions contained herein.

**XIV.   Further Assurances**.   The parties agree that each shall take such further action without additional compensation or consideration as required to accomplish the separation contemplated by this Agreement.

**XV.   Costs.**  For the purposes of accomplishing the separation, the parties have incurred substantial costs.  Each party reserves the right to seek compensation for these costs as appropriate by mutual agreement or through the CBC/Pardini District Court Action.  The parties agree not to delay any of their respective obligations under this Agreement because of alleged costs or fees associated with the work, licenses or requirements needed to effectuate the separation contemplated by this Agreement.

**XVI.   Open Items.**  The parties have a number of additional disputed issues that relate to their ability to conduct ongoing business in light of the Preliminary Injunction and have agreed to raise them with Magistrate Judge Beck.  Failure to address or resolve any of the following open issues shall have no effect on the terms or effectiveness of this Agreement.  Such issues include, but are not limited to the following:

    A.     The Preliminary Injunction does not specifically address the cost of custom development of eF&I Complete for resellers such as IZMO.  Data Consultants has asserted that it does not want to develop software for IZMO without being compensated for that development and believes that it is not obligated to do any software development under the Preliminary Injunction for IZMO.  CBC disagrees, and contends that there is no significant custom development required for IZMO, rather it is service which should be provided by Data Consultants consistent with the Preliminary Injunction and previously agreed to by Data Consultants.

    B.     The Preliminary Injunction does not specifically address payment of commissions for credit bureau services that are ordered from CBC by Data Consultants' customers.  Currently, Data Consultants is continuing to route business to CBC and believes that it is entitled to compensation for such referrals.  Data Consultants further contends that it is entitled to payments on the order of

$60,000.00 of past due commissions. CBC disagrees.

C. The Preliminary Injunction limits Data Consultants' ability to modify the eF&I and eCredit source code. Data Consultants would like to clarify its rights.

D. In connection with the separation contemplated by this Agreement, Data Consultants agreed to provide CBC with a copy of the eCredit source code. CBC believes that the eCredit source code includes source code for the eSignature and Drivers License Scanner functions and Data Consultants disagrees.

E. The parties dispute whether or not CBC shall have the ability to enable or disable forms or configure dynamic fees and taxes via the eF&I Support Tool for CBC's eF&I customers.

F. The parties do not agree whether the branding and copyright notice of eF&I for the CBC customers should be CBC or Data Consultants.

G. Bill Pardini wants to divest his shares of CBC stock to terminate such liability as might be imputed to him due to share ownership. IN WITNESS WHEREOF the parties hereto have executed this Agreement as of the date set forth next to their signature.

IT IS SO ORDERED.

**Dated:   December 3, 2010**                          **/s/ Lawrence J. O'Neill**
                                                                              UNITED STATES DISTRICT JUDGE